# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| MJM Yachts, LLC, | Civil Action No.: 2:21-cv-906-MBS |
| Plaintiff, | |
| v. | **OPINION and ORDER** |
| Ram Investments of South Florida, Inc., doing business as Seevee Boats, | |
| Defendant. | |

This matter is before the court on Defendant Ram Investments of South Florida, Inc., doing business as Seavee Boats's ("Seavee") motion to dismiss for lack of personal jurisdiction and improper venue.[1] ECF No. 12. Plaintiff MJM Yachts, LLC ("MJM") filed a response on May 24, 2021, ECF No. 13, and Seavee filed a reply on May 31, 2021, ECF No. 15. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). For the reasons explained below, the court grants MJM's request to engage in jurisdictional discovery and holds the motion to dismiss in abeyance pending completion of such discovery.

## BACKGROUND

MJM is a South Carolina boat manufacturer that owns multiple trademarks with respect to the design of recreational boats. Specifically, MJM owns five marks that together are known as the "MJM Brand": 34Z, 35Z, 40Z, 43Z, 50Z. ECF No. 1 at ¶. MJM alleges that Seavee has knowingly branded and identified its recreational boats and yachts "with a number followed by the capital letter Z," to resemble the MJM Brand. *Id.* at ¶ 15. Examples of Seavee's branding

---

[1] The caption incorrectly names Defendant as "Seevee."

include 322Z, 340Z, 370Z, 390Z, and 450Z ("Ram marks"). *Id.* On the basis of Seavee's use of the Ram marks, MJM asserts claims for federal trademark infringement and unfair competition, South Carolina statutory trademark infringement and unfair competition, and unfair competition under South Carolina common law.

On May 10, 2021, Seavee filed the pending motion to dismiss for lack of personal jurisdiction and improper venue. ECF No. 12. MJM filed a response in opposition, asking in the alternative that the court permit it to engage in jurisdictional discovery should the court find no personal jurisdiction. ECF No. 13. Seavee filed a reply opposing the request for jurisdictional discovery. ECF No. 15. The court is sufficiently apprised of the issues and finds that a hearing would not materially aid in its adjudication of the motion.

## LEGAL STANDARD

### I.  Federal Rule of Civil Procedure 12(b)(2)

Under Rule 12(b)(2), the court may dismiss a case for lack of personal jurisdiction. "[A] defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). "The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court." *Id.* at 268. Here, where the court addresses the personal jurisdiction question by reviewing the parties' motions and briefs and the allegations in the complaint, Plaintiff "need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Id.* (citing *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989)). While the court must construe all factual allegations in the light most favorable to the nonmoving party, the showing of personal jurisdiction "must be based on specific facts set forth in the record in order to defeat [a]

2

motion to dismiss." *Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992). The court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, "without converting the motion to dismiss into a motion for summary judgment." *Id. See Grayson*, 816 F.3d at 268 (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (explaining that courts may consider affidavits from any party when applying the prima facie standard)). Ultimately, "a plaintiff must establish facts supporting jurisdiction over the defendant by a preponderance of the evidence." *Grayson*, 816 F.3d at 268 (citing *Combs,* 886 F.2d at 676) (noting that "the burden [is] on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence").

II.     **Federal Rule of Civil Procedure 12(b)(3)**

Under Rule 12(b)(3), a defendant may move to dismiss an action as brought in an improper venue.  A plaintiff need "make only a prima facie showing of proper venue in order to survive a motion to dismiss."  *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365-66 (4 th Cir. 2012) (citation omitted).  The court must view the facts in the light most favorable to the plaintiff when determining whether plaintiff has made a prima facie showing of proper venue.  *Id.*

## DISCUSSION

I.     **Legal Authority**

Seavee is a Florida business and argues that the court lacks personal jurisdiction over it. ECF No. 1 at ¶ 2; ECF No. 12 at 2.  A federal district court can exercise personal jurisdiction over a nonresident defendant if "(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014).  The South Carolina long-arm statute is coextensive with

the due process clause, which reduces the question to whether the exercise of personal jurisdiction would violate due process. *Moosally v. W.W. Norton & Co.*, 594 S.E.2d 878, 883 (S.C. App. 2004). Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Personal jurisdiction may be exercised generally or specifically. General jurisdiction is established where the defendant's contacts with the forum state have been "continuous and systematic," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984), and are "so constant and pervasive as to render it essentially at home in the forum State," *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).[2] "General jurisdiction permits the court to hear any and all claims against the defendant, regardless of where the claims arose or the plaintiff's citizenship." *Fidrych v. Marriott International, Inc.*, 952 F.3d 124, 131-32 (4th Cir. 2020).

By contrast, specific jurisdiction is based on a defendant's conduct in the state connected to the lawsuit. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002) (citing *Helicopteros Nacionales*, 466 U.S. at 414. Where the defendant lacks the contacts to be considered essentially at home in the forum state, "the court may exercise specific jurisdiction if the defendant has continuous and systematic contacts with the forum state and the claims at issue arise from those contacts with the forum state." *Fidrych*, 952 F.3d at 132 (citing *Daimler*, 571 U.S. at 126-27). Specific jurisdiction depends upon "(1) the extent to which the defendant

---

[2] "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," such as where it is incorporated and where it has its principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016).  With respect to the first prong, the Fourth Circuit has identified the following factors the court may consider in assessing whether a business has purposefully availed itself of a forum:

> Whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality, and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

*Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal citations omitted).  The second prong of the test requires "that the defendant's contacts with the forum state form the basis of the suit."  *Id.* at 278-79 (citations omitted).  And the third prong "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there":

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Id.* at 279.

**II.     Arguments and Findings**

Seavee argues the complaint fails to allege facts sufficient to establish either general or specific jurisdiction.  In support, Seavee attaches the affidavit of its President and Director, Ariel

Pared, who attests in relevant part that Seavee has "never done business in South Carolina"; "never owned real or business property in South Carolina"; "never contracted to supply service of things in South Carolina"; "never filed suit or defended any action in South Carolina"; "never entered into any contract to be performed in whole or in part by either party in South Carolina"; "never opened or held a bank account in South Carolina"; "never registered to do business in South Carolina"; and never maintained an officer or agents in South Carolina. ECF No. 12-1 at 2. Mr. Pared further attests that a majority of Seavee vessels are manufactured at Seavee's headquarters, located in Medley, Florida; all Seavee sales are made through headquarters; and customers take possession of their vessels at Seavee's headquarters. ECF No. 12-1 at ¶¶ 4, 8. Seavee "maintains no sales office, manufacturing facilities, storage or any other business property outside of the State of Florida." *Id.* at ¶ 7.

MJM responds by referring the court to the complaint, which alleges as follows. Seavee "sells and offers for sale under the Ram marks recreational boats and yachts in South Carolina and in interstate commerce"; Seavee "promotes its boats *inter alia* via its website https://www.seaveeboats.com/"; and Seavee "displays the name RAM in large letters on its store signage, and website advertising." ECF No. 1 at ¶ 16. Seavee's Ram marks "are used on the same or similar types of goods and services as those on which MJM's Brand is used"; Seavee "sells boats that compete directly with MJM's product line"; "MJM operates in the same geographic area now served by [Seavee]"; and "MJM Brand boats are sold to customers in the State of South Carolina." *Id.* at ¶ 20. Seavee's "products and services advertised, promoted, offered for sale, or sold under the Ram marks and derivatives of those marks are offered and/or promoted in the same channels of trade as MJM's products under the MJM Brand"; Seavee and MJM "advertise, promote, and offer their products and services to customers in South Carolina and across the United

6

States, including through websites located on the Internet"; and MJM and Seavee's "advertising and promotional materials are directed to the same or similar consumers." *Id.* at ¶ 21.

MJM further alleges that "Defendant's products under the Ram marks are being provided and/or promoted, and are likely to continue being provided and/or promoted, throughout the same geographic region markets as MJM's products . . . ," ECF No. 1 at ¶ 23; ". . . [Defendant] injured and threatened to further injure MJM's right to use the MJM Brand as the exclusive indicia of origin of MJM's boats, in South Carolina and elsewhere in the United States . . . ," *id.* at ¶ 28; "Defendant has violated and infringed MJM's trademark rights in the Ram marks, and has used, without the consent of the owner, a mark that is a reproduction, counterfeit, copy, or colorable imitation of a mark owned by MJM in connection with the sale of goods and services in South Carolina," so as to "cause confusion, deception, or mistake as to the source of the goods and services and has used the same on labels, signs, and in advertising in violation of the law of South Carolina," *id.* at ¶ 36; and ". . . Defendant's unfair or deceptive acts and practices have adversely affected members of the public in South Carolina, and, on information and belief, are not only capable of repetition, but have been repeated and will be continued unless enjoined," *id.* at ¶ 37.

MJM additionally contends that Seavee's factual assertions regarding the limitation of its business activities and use of marks to Florida are "inconsistent with and discredited by information and documents available in the public record," to wit, documents recorded with the United States Patent and Trademark Office ("USPTO").  ECF No. 13 at 5.  MJM argues that Seavee's federal trademark registration "provides it with nationwide intellectual property rights," and that in order to secure and maintain that registration, Seavee "had to make verified statements to the USPTO that, continuously since 1974, [Seavee] has been using its trademark in interstate commerce, specifically selling boats in interstate commerce," and Seavee "had to submit verified

7

specimens demonstrating such activities . . . ." *Id.* at 6. MJM contends that one of the verified specimens Seavee submitted to the USPTO shows "Seavee's infringing use of marks that are confusingly similar to MJM's federal registrations, names, '270Z,' '320Z,' '340Z,' '370Z,' and '390Z.'" *Id.* at 7. MJM also references Seavee's website, which it describes as interactive and designed to "reach outside of Florida and into South Carolina, where it directly competes with MJM for customers." *Id.* And MJM references Seavee's social media presence, used to advertise its allegedly infringing line of boats on Instagram and Facebook. *Id.* at 8-9.

MJM asserts that the court should take as true the complaint's allegations at this early stage in the proceedings and permit MJM an opportunity to engage in jurisdictional discovery. MJM contends that such discovery will reveal how many South Carolinians have engaged in the use of Seavee's website to contract to build and purchase Seavee boats, ECF No. 13 at 8, and additionally how many of Seavee's "more than one hundred thousand social account followers are South Carolinians," "how many of its postings are directed to South Carolinians," and "how many boat sales have resulted to South Carolinians," *id.* at 10.

In reply, Seavee argues that MJM has offered only speculatory and conclusory allegations regarding Seavee's contact with South Carolina and that the court should therefore deny the request for jurisdictional discovery. ECF No. 15.

The court finds that in viewing the factual disputes in MJM's favor, MJM has made a prima facie showing of personal jurisdiction such that jurisdictional discovery is appropriate. *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402-03 (4th Cir. 2003) (recognizing district courts have broad discretion to grant discovery). MJM's allegations relevant to personal jurisdiction focus in particular on Seavee's online presence with respect to its website and social media accounts. The Fourth Circuit has held that "[a] State may, consistent

with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 399.  The court finds that limited jurisdictional discovery is appropriate to determine if Seavee has engaged in the sort of activity to render it amenable to jurisdiction here.  The court declines to make findings at this time with respect to Seavee's argument regarding improper venue, as it is merely an extension of Seavee's arguments contesting personal jurisdiction.

### III.     Scope of Jurisdictional Discovery

MJM asks to take discovery with respect to both specific jurisdiction and general jurisdiction.  With respect to specific jurisdiction, MJM contends:

> Seavee has purposefully availed itself to the privilege of participating in the boat market here and intentionally using infringing marks here to misappropriate MJM's goodwill with customers here; the claims at issue in this litigation specifically arise out of those infringing activities; and jurisdiction is constitutionally reasonable, as South Carolina clearly has an interest in protecting its residents from being confused and misled, and in protecting MJM from unfair competition in violation of its state statutes and suffering injury here from Seavee's intentional misconduct.

ECF No. 13 at 15.  With respect to general jurisdiction, MJM contends that "the scope of Seavee's boat sales business and intentionally infringing conduct here appears to be continuous and systematic based on its publicly visible online activities and verified statements to the USPTO that it has been selling boats in interstate commerce while using intellectual property for the last several decades . . . ."  *Id.* at 15-16.

As to general jurisdiction, in most instances a corporation is subject to all-purpose jurisdiction only in its place of incorporation or principal place of business.  *Daimler*, 571 U.S. at 137-39 (explaining that only in the "exceptional case" can a corporate defendant's contacts with

9

another forum be "so substantial and of such a nature as to render the corporation at home in that State," and rejecting as "unacceptably grasping" the argument that general jurisdiction could be exercised "in every State in which a corporation engages in a substantial, continuous, and systematic course of business").  This onerous standard notwithstanding, the court finds that MJM has met the much lighter prima facie requirement necessary to engage in limited discovery.  At this early stage in the lawsuit and upon review of the allegations viewed in a light most favorable to MJM, the court will permit MJM to engage in discovery targeted at establishing both specific and general personal jurisdiction.

However, the court finds that the Federal Rules of Civil Procedure governing discovery necessitate limiting the amount of discovery requests MJM may propound to correspond in proportion to the relatively narrow scope and low volume of factual allegations contained in the complaint.  Accordingly, MJM shall propound no more than 10 interrogatories and 10 requests for production and notice no more than 2 depositions, limited in subject matter to personal jurisdictional.  The deadline for completing jurisdictional discovery is on or before sixty days after the entry of this order.  Within fourteen days following completion of discovery, the parties shall each submit a supplemental brief to the motion to dismiss.

For the reasons stated, the court holds the motion to dismiss, ECF No. 12, in abeyance pending limited jurisdictional discovery as discussed herein.

**IT IS SO ORDERED.**

/s/Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

June 11, 2021
Charleston, South Carolina

10